FOR THE COUNTY OF

# YORK.

*APRIL TERM,*

## 1822.

—»»•©©•««—

*Note.* WESTON J. was not present during this term.

---

THE INHABITANTS OF YORK *v.* THE INHABITANTS OF PENOBSCOT.

If a notice to a town chargeable with the support of paupers, be defective in not being signed by the overseers in their official capacity, or in not describing the paupers with sufficient precision; yet if it be understood and answered without any objections on account of its insufficiency, such objections are thereby waived.

*ASSUMPSIT* to recover the expenses incurred by the plaintiffs in the support of *Betsey Thomas,* and her two children.

It appeared that the overseers of the poor of *York* addressed a letter *June* 24, 1816, signed by *Edward Simpson* as one of the overseers and by order of the board, to the defendants, in which they stated that *Betsey Thomas,* an inhabitant of *Penobscot,* was supported as a pauper in *York,* and requested the defendants to pay her past expenses and remove her. In this letter they say they had previously written to the defendants on the same subject, but had received no answer.

A second letter addressed to the overseers of the poor of *Penobscot, December* 30, 1816, was written in the language of the overseers of *York,* and contained the following passage ;—
"We have written you twice that *Betsey Thomas and her two* "children, inhabitants of your town, is chargeable in this town, "and have not received any answer from you. We hereby "notify you that the said *Betsey Thomas* is still in this town,

VOL. II.                    2

" and is chargeable." But this letter was signed only with the name of *Edward Simpson*, without any addition of office, or indication of the character in which he signed it. To this the overseers of the poor of *Penobscot* replied by letter addressed to the overseers of the poor of *York*, *January* 8, 1817, acknowledging the receipt of their letter of *December* 30,—denying the receipt of any information relative to " *Betsey Thomas* and *two children*,"—and referring to a letter which mentioned the *mother alone*, as the only one they had received from the plaintiffs;—the letter thus alluded to being that of *June* 24, as appeared by a subsequent reference to some part of its contents. They also suggest a method of removing the mother *and children* to *Penobscot*, the latter of whom they express their intention to bind out to some good master, and request information of the amount of expenses for the support of the mother and children.

At the trial of the cause, the counsel for the defendants objected that here was no evidence of notice that the *children* were chargeable, but the Judge who presided at the trial overruled the objection; and a verdict was taken for the plaintiffs, subject to the opinion of the whole Court upon that question, and to stand or be amended accordingly.

*Wallingford, for the defendants.*

The only letter written in an official character, is that of *June* 24. The other is merely the letter of a private individual, not assuming to act in his public capacity, and therefore not to be regarded in the cause.

The official letter mentioning *Betsey Thomas* only, there has been no notice as to the children, and the verdict therefore is erroneous to the amount furnished for *their* support.

*Lyman, for the plaintiffs.*

1. The notice of *June* 24, is substantially sufficient to include the children, they being young, and dependent for nurture upon the mother. It cannot be necessary ever to name the children in these cases, where they are of too tender an age to be removed from her immediate care.

2. The letter of *December* 30, is manifestly official, for it is couched in the language of the overseers, and is signed by one

of them; and it is not material in what part of the letter his character or authority is expressed. Here it is apparent from its whole tenor.

3. But the answer of the defendants, in which they do not contest their liability to support the children, and propose arrangements for their removal and the payment of their expenses, is a waiver of any objection which might otherwise legally exist, either to the form of the notice, or to its subject matter. *Westminster v. Barnardston,* 8 *Mass.* 104. *Bridgewater v. Dartmouth,* 4 *Mass.* 273.

MELLEN C. J. afterwards delivered the opinion of the Court as follows.

Two objections are urged against the instructions of the Judge to the jury.

1. The letter of *December* 30, 1816, is not signed by *Simpson* as one of the overseers of the poor of the town of *York,* nor in their behalf by their order.

2. No legal notice was given to the overseers of *Penobscot* that the *children* of *Betsey Thomas* were chargeable to *York.*

As to the *first* point.—It appears that prior to *June* 1816, a correspondence had existed between the overseers of the two towns relating to *Betsey Thomas* and one *Hannah Bridges.*—On the part of *York, Simpson* was the correspondent, expressly acting for the board of overseers.—He so signed the letter of *June* 4th, 1816.—It is true his letter of *December* 30th, appears, by what is *said to be* a copy of that letter, to have been signed merely with his name, without the addition of his office, and he not stating himself as signing by order in behalf of the board. Still he speaks in the *plural* number, in the language of overseers in regard to their official duties, and upon the subject of his former letter, which was signed expressly by order of the overseers. The overseers of *Penobscot,* well knowing the character in which *Simpson* was acting, considered it as an *official* letter, and on the 8th of *January* following answered it *as such :* commencing with the address " Gentlemen" and directing their answer to the overseers of *York.*—These facts afford strong reason to suppose, that the original letter in the possession of the defendants and which they have not thought prop-

er to produce, may have been, signed by *Simpson* as suggested by the plaintiffs. But however this may be, after proceeding in this manner, it is too late for the defendants to make this objection with success.—The intention of the law seems in this particular to have been complied with.

As to the *second* point. It is clear that the notice given in the letter of *June* 4, 1816, is insufficient as it regards the *children* of *Betsey Thomas* :—no allusion being made to them in that letter.—See the case of *Bangor v. Deer-Isle,* 1 *Greenl.* 329.— It appears that no notice was ever received by the overseers of *Penobscot* respecting the children, except what is contained in the letter of *December* 30 ; and this is rather loose and uncertain in its language ; sometimes speaking of *Betsey Thomas* as chargeable,—then requesting the removal of *Betsey Thomas and her children,* then again speaking of expense incurred in supporting *her,*—not mentioning the children.

Notwithstanding all this, the overseers of *Penobscot* seem to have perfectly comprehended the meaning of the letter and to have governed themselves accordingly in their answer of *January* 8th.—In this letter they deny having received any notice respecting the children, except what is contained in the one of *December* 30 ; and then they request the removal of *Betsey Thomas and children* to *Penobscot* by some convenient conveyance ; and conclude by further requesting the amount of expense incurred by *York* in the support of *Betsey Thomas and children,* and express an opinion as to the best mode of disposing of the children in the service of some good master. Here we find an *acceptance* of the notice, instead of an *objection* against it on account of any informality or want of precision ; and on *this ground,* we think the instructions of the presiding Judge to the jury were correct.—It is perfectly clear that *of itself,* and unconnected with the answer of *January* 8th, the notice must be considered as insufficient ; and if no reply had been made by the overseers of *Penobscot,* or if such insufficiency had been objected to, the defect in this particular would be fatal to the action. But according to the cases of *Emden v. Augusta,* 12 *Mass.* 307. and *Shutesbury v. Oxford,* 16 *Mass.* 102, the conduct of the defendants' officers, has cured the defect in the notice.—We must consider them by their answer of *Janu-*

*ary* 8th, as waiving all objections to form and placing the claim of the plaintiffs on its merits; or else of practising duplicity on purpose to deceive and injure; which we are not disposed to do.

We cannot suppose that the jury allowed any of the charges for expenses incurred more than two years before the commencement of the action, because they were barred by law— and as more than two years had elapsed after the notice of the 30th of *December* 1816, and prior to the commencement of this suit, we must presume the jury returned their verdict for the amount which they thought proper to allow for expenses incurred during the *two years* next before the action was commenced. —In this view of the subject, we perceive no ground for a new trial; and accordingly there must be

*Judgment on the verdict.*